NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 9 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

C.D., by his guardian ad litem Michelle Dougherty,

          Plaintiff-Appellant,

  v.

ATASCADERO UNIFIED SCHOOL DISTRICT,

          Defendant-Appellee.

No.   23-55563

D.C. No.
2:22-cv-05937-MCS-AGR

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted March 25, 2024
Pasadena, California

Before: GRABER, GOULD, and FORREST, Circuit Judges.

C.D. appeals the district court's dismissal of his action against Atascadero

Unified School District ("Atascadero"). C.D. is a high school student with

disabilities who resided at relevant times in the district. In May 2022, Atascadero

removed C.D. from his Individualized Education Program ("IEP") placement for

---

     [*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

more than ten days because C.D. violated Atascadero's student code of conduct when he assaulted a teacher three times. Atascadero held a manifestation determination meeting and concluded that C.D.'s conduct was not a manifestation of his disabilities. Atascadero then expelled C.D. Fifteen days later, after the teacher whom C.D. assaulted transferred to a different school, Atascadero rescinded C.D.'s expulsion.

C.D. requested a due process hearing, appealing the manifestation determination. An administrative law judge ("ALJ") from the California Office of Administrative Hearings heard the matter over the course of seven days and issued a thirty-two-page decision in which she agreed with Atascadero that C.D.'s conduct was not a manifestation of his disabilities. After independently reviewing the record, the district court agreed that C.D.'s conduct was not a manifestation of his disabilities and dismissed the case with prejudice. C.D. timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

In cases arising under the Individuals with Disabilities Education Act ("IDEA"), we review the district court's factual findings "for clear error, even when they are based on the written record of administrative proceedings." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (citing *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)). We review the district court's legal conclusions *de novo*. *L.J. ex*

*rel. Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1002 (9th Cir. 2017).
Our review in IDEA cases "is far less deferential than judicial review of other agency actions, but requires this court to refrain from substituting its own notions of educational policy for those of the school authority it reviews." *Id.* at 1002–03. We accord administrative rulings in IDEA cases "due weight," *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982), with particular deference where the ALJ's findings are "thorough and careful," *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (quoting *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994)).

1. The district court did not clearly err in concluding that C.D.'s conduct was not a manifestation of his disabilities. When a student with an IEP violates a student code of conduct, the school may remove the student from his placement for more than ten days only if "the behavior that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability." 20 U.S.C. § 1415(k)(1)(C). In such circumstances, the school must hold a manifestation determination meeting, with the parent and relevant IEP team members, to "review all relevant information in the student's file" and determine: (1) "if the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or" (2) "if the conduct in question was the direct result of the [school]'s failure to implement the IEP." *Id.* § 1415(k)(1)(E)(i).

In considering a manifestation determination, we do not attribute all of a student's conduct to his disabilities because doing so "would amount to asserting that all acts of a [child with disabilities], both good and bad, are fairly attributable to his [disabilities]." *Doe ex rel. Gonzales v. Maher*, 793 F.2d 1470, 1482 (9th Cir. 1986), *aff'd as modified sub nom. Honig v. Doe*, 484 U.S. 305 (1988). The district court and ALJ both carefully considered the record and evidence before them and reasonably concluded that C.D.'s conduct was not a manifestation of his disabilities. While all IEP team members acknowledged that C.D.'s disabilities sometimes manifest in difficulties with focus, attention, or compliance, Atascadero team members distinguished the conduct at issue, which was particularly inappropriate, violent, and targeted. Because the conduct that led to Atascadero's discipline of C.D. was exceptional, volitional, and attenuated from his disabilities, the district court did not err.

2. C.D. also alleges two procedural errors in Atascadero's original manifestation determination: (1) that in making its manifestation determination, Atascadero did not consider all relevant information; and (2) that Atascadero did not provide C.D.'s parent with written copies of staff statements recounting the conduct in question before or during the manifestation determination meeting. It appears that Atascadero complied with the relevant procedural safeguards: Atascadero held a manifestation determination meeting, attended by C.D.'s parent

4

and eight school staff members, within ten days of suspending C.D.; the team considered the circumstances of the events at issue, C.D.'s evaluation and diagnostic results, observations, health records, school disciplinary records, IEP, services, placement, and additional analyses from the school psychologist and principal; and the team, with the exception of C.D.'s parent, concluded that the conduct in question was not a manifestation of C.D.'s disabilities. But even if we assume that Atascadero committed the alleged procedural violations during the manifestation determination meeting, those violations would now be harmless because of the robust process before the ALJ, during which the ALJ considered additional evidence and testimony over the course of seven days, and at which point C.D., C.D.'s parent, and C.D.'s counsel all had access to the staff statements recounting C.D.'s conduct. The ALJ's thorough and careful decision in this case is entitled to substantial deference. *See R.B.*, 496 F.3d at 942.

**AFFIRMED.**